PALMER *v.* BENDER, ADMINISTRATRIX.

No. 215. Argued December 14, 15, 1932.—Decided January 9, 1933.

552

Mr. *John H. Tucker, Jr.*, with whom *Messrs. Fred R. Angevine, Henry P. Dart, Jr.*, and *Henry P. Dart* were on the brief, for petitioner.

*Assistant Attorney General Youngquist*, with whom *Solicitor General Thacher*, and *Messrs. Whitney North Seymour, J. Louis Monarch*, and *Andrew D. Sharpe* were on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Petitioner brought suit in the District Court for Western Louisiana to recover taxes alleged to have been illegally exacted for 1921 and 1922 upon income derived from oil properties by petitioner as a member of two partnerships, known respectively as the Smitherman and Baird partnerships. Both partnerships, after 1913, acquired oil and gas leases of unproved Louisiana lands and engaged in drilling operations on them which resulted in discovery of oil on March 30, 1921, in the case of the Smitherman leases, and on August 23, 1919, in the case of the Baird leases.

In April, 1921, the Smitherman partnership executed a writing by which it conferred on the Ohio Oil Company the right to take over a part of the leased property on which the producing well was located, subject to the obligations of the covenants of the leases, in consideration of a present payment of a cash bonus, a future payment to be made " out of one-half of the first oil produced and saved " to the extent of $1,000,000, and an additional " ex-

cess royalty" of one-eighth of all the oil produced and saved. The instrument in terms stated that the partnership "does sell, assign, set over, transfer and deliver . . . unto the Ohio Oil Company" the described leased premises. The Baird partnership, in November, 1921, gave a similar document to the Gulf Refining Company containing some additional features which in the view we take are immaterial. It too stipulated for future payment of royalties in kind from the oil produced and saved.

Petitioner's tax returns for the years 1921 and 1922 reported his distributive share of the income from the Smitherman partnership, derived from the bonus payment and oil received under its contract with the Ohio Oil Company, and also his share in the income from the Baird partnership from oil received under its contract with the Gulf Refining Company. In the returns for both years petitioner, relying upon the provisions of § 214 (a) (10) of the Revenue Act of 1921, 42 Stat. 239, regulating depletion allowances in the case of oil and gas wells, made a deduction for depletion based on the value of the oil in place in the two properties on the respective dates of discovery.

The Commissioner refused to allow these deductions, on the theory that both transactions were sales of the leases by the partnerships and that the only allowable deductions, in calculating taxable gain, are those based upon the cost of the respective properties to petitioner, in each case materially less than their value at the date of the discovery of oil. This resulted in the assessment and payment of an increased tax which is the subject of the present suit. Judgment of the District Court, 49 F. (2d) 316, denying petitioner the right to make the deductions claimed, was affirmed by the Court of Appeals for the Fifth Circuit, 57 F. (2d) 32. This court granted certiorari.

Both courts below, following earlier decisions of the Court of Appeals with respect to the two instruments

involved here, held that they were assignments or sales of the leases for the stipulated consideration of bonus paid and royalties to be received. See *Waller* v. *Commissioner,* 40 F. (2d) 892; *Herold* v. *Commissioner,* 42 F. (2d) 942. The Government rests its case on this conclusion. It concedes that if any reversionary interest, according to the common law, however small, has been retained in the leased land by the two partnerships, the petitioner is entitled to the depletion allowances claimed, but insists that no such interest was reserved by the instruments in question. Petitioner contends that by the Louisiana law any transfer of an interest in land, yielding to the transferor, as consideration, the fruits of the land as they may be produced, such as the royalty oil in the present case, must be regarded as a lease. See *Robertson* v. *Pioneer Gas Company,* 173 La. 313. From this he concludes that the two instruments were subleases and invokes the rule recently affirmed in *Murphy Oil Co.* v. *Burnet, ante,* p. 299, that the lessor of an oil and gas well is entitled to a depletion allowance upon bonus and royalties received from the lessee, under § 234 (a) (9) of the Revenue Act of 1918. Section 214 (a) (10) of the Revenue Act of 1921, which is applicable here, contains the same provisions.

It has been elaborately argued at the bar and in the briefs whether under Louisiana law the two instruments are assignments or subleases. We do not think the distinction material. Nothing in § 214 (a) (10) indicates that its application is to be controlled or varied by any particular characterization by local law of the interests to which it is to be applied. See *Burnet* v. *Harmel, ante,* p. 103. We look to the statute itself and to the decisions construing it to ascertain to what interests it is to be applied and then to the particular interests secured to the two partnerships by the instruments in question to ascertain whether they come within the statutory provision. The formal attributes of those instruments or the descrip-

tive terminology which may be applied to them in the local law are both irrelevant.

Sec. 214 (a) (10) of the Act of 1921 so far as now material is printed in the margin.[1] It will be observed that the statute directs that reasonable allowance for depletion be made as a deduction in computing net taxable income, " in the case of oil and gas wells, . . . according to the peculiar conditions in each case." The allowance to the taxpayer is not restricted by the words of the statute to cases of any particular class or to any special form of legal interest in the oil well. It is true that under Article 215 of Treasury Regulations 62 the lessor of an oil or gas well is entitled to a depletion allowance upon the bonus and royalties received from the lessee. See *Murphy Oil Co.* v. *Burnet, supra.* But there is nothing in the statute or regulations which confines depletion allowances to those who are technically lessors. The concluding sentence of the section that " In the case of leases the deductions allowed by this paragraph shall be equitably appor-

---

[1] Sec. 214. (a) That in computing net income there shall be allowed as deductions:

. . . . .

(10) In the case of mines, oil and gas wells, . . . a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: . . . *Provided further,* That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter: . . . such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and the lessee. . . .

tioned between the lessor and the lessee" presupposes that the deductions may be allowed in other cases. The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital.

That the allowance for depletion is not made dependent upon the particular legal form of the taxpayer's interest in the property to be depleted was recognized by this Court in *Lynch* v. *Alworth-Stephens Co.,* 267 U. S. 364. There a depletion allowance under § 12 (a) of the 1916 Act, 39 Stat. 767, was claimed by a lessee of a mining lease, in the computation of tax on income from the proceeds of ore mined. The statute made no specific reference to lessees and the Government argued that as the lessee acquired no ownership of the ore until the severance from the soil (see *United States* v. *Biwabik Mining Co.,* 247 U.S. 116, 123) the lease gave him no depletable interest in the ore in place. But this Court held that regardless of the technical ownership of the ore before severance, the taxpayer, by his lease, had acquired legal control of a valuable economic interest in the ore capable of realization as gross income by the exercise of his mining rights under the lease. Depletion was, therefore, allowed.

Similarly, the lessor's right to a depletion allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. It is enough if, by virtue of the leasing transaction, he has retained a right to share in the oil produced. If so he has an economic interest in the oil, in place, which is depleted by production. Thus, we have recently held that the lessor is entitled to a depletion allowance on bonus and royalties, although by the local

law ownership of the minerals, in place, passed from the lessor upon the execution of the lease. See *Burnet* v. *Harmel, supra; Bankers Pocahontas Coal Co.* v. *Burnet, ante* p. 308.

In the present case the two partnerships acquired, by the leases to them, complete legal control of the oil in place. Even though legal ownership of it, in a technical sense, remained in their lessor, they, as lessees, nevertheless acquired an economic interest in it which represented their capital investment and was subject to depletion under the statute. *Lynch* v. *Alworth-Stephens Co., supra.* When the two lessees transferred their operating rights to the two oil companies, whether they became technical sublessors or not, they retained, by their stipulations for royalties, an economic interest in the oil, in place, identical with that of a lessor. *Burnet* v. *Harmel, supra; Bankers Pocahontas Coal Co.* v. *Burnet, supra.* Thus, throughout their changing relationships with respect to the properties, the oil in the ground was a reservoir of capital investment of the several parties, all of whom, the original lessors, the two partnerships and their transferees, were entitled to share in the oil produced. Production and sale of the oil would result in its depletion and also in a return of capital investment to the parties according to their respective interests. The loss or destruction of the oil at any time from the date of the leases until complete extraction would have resulted in loss to the partnerships. Such an interest is, we think, included within the meaning and purpose of the statute permitting deduction in the case of oil and gas wells of a reasonable allowance for depletion according to the peculiar conditions in each case.

The statute makes effective the legislative policy, favoring the discoverer of oil, by valuing his capital investment for purposes of depletion at the date of the discovery rather than at its original cost. The benefit of it accrues

to the discoverer if he operates the well as owner or lessee, or if he leases it to another. It would be an anomaly if that policy were to be defeated and all benefit of the depletion allowance withheld because he chose to secure the return of his capital investment by stipulating for a share of the oil produced from the discovered well through operation by another.

The bonus received by the Smitherman partnership was a return *pro tanto* of the petitioner's capital investment in the oil, in anticipation of its extraction, resulting in a corresponding diminution in the unit depletion allowance upon the royalty oil as produced. Compare *Murphy Oil Co.* v. *Burnet, supra.*

*Reversed.*