ELBE OIL LAND DEVELOPMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54773, 60157.   Promulgated April 14, 1936.

*Fred R. Angevine, Esq., W. L. E. O'Bryan, Esq.,* and *C. Wm. Wittman, C. P. A.,* for the petitioner.
*Elden McFarland, Esq.,* for the respondent.

OPINION.

TYSON: These consolidated proceedings seek redetermination of income tax deficiencies in the amounts of $16,626.09 for the year 1928 and $12,149.50 for the year 1929, asserted by respondent as the result of several adjustments made by him in the income reported by petitioner for those years. All issues, except one, have been waived or stipulated and effect thereto will be given upon the recomputation under Rule 50. The stipulation of facts and exhibits attached thereto are included herein by reference.

The sole remaining issue, as to both years, involves the question of whether petitioner is entitled to a deduction of $110,000 for depletion at the rate of 27½ percent of a $400,000 payment received in each of those years under the terms of a written contract relative to certain oil and gas properties, executed on October 3, 1927.

Petitioner, a California corporation, was organized on February 4, 1924. It acquired certain properties consisting of oil and gas prospecting permits, drilling agreements, leases, and equipment. Development work carried on by it resulted in the discovery of oil on its properties and on October 3, 1927, oil was being produced in commercial quantities.

As of October 3, 1927, under the terms of the written contract executed on that date, the petitioner sold, transferred, and conveyed all of its right, title, and interest in and to certain described prospecting permits, drilling agreements, leases, and equipment, unto

334

the Honolulu Consolidated Oil Co., a California corporation, the latter to "have the sole ownership of and the right to sell or otherwise dispose of, all oil and/or gas and derivative products produced in, on or upon said properties", it being "the intention of the parties to this agreement that the full and complete ownership, control and operation of said properties shall vest, upon execution hereof, in Honolulu * * * and Elbe shall have no interest in or to any of said properties whatsoever." The consideration to be paid to petitioner, as set forth in paragraph 7 of said contract, was $350,000 cash upon the execution of the contract and thereafter, if the Honolulu Consolidated Oil Co. did not elect to abandon the purchase of the properties and execute reconveyances as provided by paragraph 9 of the contract, the sum of $400,000 on the 14th day of March of each of the years 1928, 1929, and 1930 and $450,000 on March 14, 1931, together with interest as specified. Of such $2,000,000 to be received by petitioner in cash and notes, the amount of $1,963,672.95 was consideration for the oil and gas rights in the leases and the remainder was consideration for equipment and other property conveyed. The stated consideration for such sale was fixed at the definite amount of $2,000,000, to be paid without reference to, and without being in any manner based upon, the production of oil from the properties conveyed.

The petitioner has received each of the payments, in the amounts and on the dates specified in the contract, totaling $2,000,000. The cost of all of the assets transferred under the contract was less than the amount of $350,000 received in 1927 and for that year petitioner reported a taxable gain, from the transaction, by applying the entire basis against the $350,000. In its returns for 1928 and 1929 petitioner claimed the deduction herein sought for depletion on the ground that the payment of $400,000 received in each of those years constituted a bonus on a sublease.

The contract, in paragraph 8 thereof, provided that, "from and after the time" when the Honolulu Consolidated Oil Co. should have been fully reimbursed from its sales of oil and gas produced from the properties, for all expenditures made in the acquisition, development, and operation thereof, it should pay to petitioner 33⅓ percent of its net profits, as defined in the contract, resulting thereafter from the continued production, if any, from the properties.

During the years here in controversy, and up to the date of hearing herein in September 1933, no payments became due or were made to petitioner by the Honolulu Consolidated Oil Co. upon the latter's wholly contingent obligation for future payments under its contract of purchase. Such contingent obligation of the Honolulu Consolidated Oil Co. is separate and apart from its obligation for the payments totaling $2,000,000 and does not impart to such payments the

character of being income realized from the retention by petitioner of an economic interest in the oil and gas produced during the period covered by such payments. We do not have before us the question of the character of such future payments if and when made or whether or not they might be subject to depletion under the then applicable revenue acts.

Therefore, the only issue now before us involves the question of whether, under the provisions of section 114 (b) (3) of the Revenue Act of 1928,[1] petitioner is entitled to a deduction of 27½ percent of $400,000 for each of the years 1928 and 1929, as an "allowance for depletion * * * of the gross income from the property during the taxable year."

Petitioner contends that this proceeding is controlled by the decision in *Palmer* v. *Bender*, 287 U. S. 551. In that case the taxpayer was the member of two partnerships which in 1921 executed writings by which it "does sell, assign, set over, transfer and deliver * * * unto the Ohio Oil Co." certain leased premises in consideration of a present payment of a cash bonus, future payments to be made "out of one-half of the first oil produced and saved" to the extent of a specified sum and an additional excess royalty of one-eighth of *all* oil produced and saved. The District Court and the Circuit Court held that the transaction constituted a sale of a capital asset, that no interest was retained in the oil and gas, and that the taxpayer was not entitled to depletion. The taxpayer in the *Palmer* case, *supra*, contended that the instrument was a lease and invoked the rule in *Murphy Oil Co.* v. *Burnet*, 278 U. S. 299, that a lessor is entitled to a depletion allowance on both bonus (advance royalties) and royalties. The Supreme Court held that it was immaterial whether the instrument constituted a sale, an assignment or a lease; that the question involved merely the application of section 214 (a) (10) of the Revenue Act of 1921, which provided for a deduction of a reasonable allowance for depletion "in the case of * * * oil and gas wells, * * * according to the peculiar conditions in each case"; that the language of the section did not restrict such allowance "to any particular class or to any special form of legal interest in the oil well", but is broad enough to include "every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his

---

[1] SEC. 114 (b). BASIS FOR DEPLETION.

\* \* \* \* \* \*

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

capital", whether the taxpayer be vendor, lessor, lessee, or their transferee, so long as by the terms of the transaction involved the taxpayer retains "a right to share in the oil produced", that is, "an economic interest in the oil, in place, which is depleted by production." The Supreme Court decided that "when the two lessees (partnerships) transferred their operating rights to the two oil companies, whether they became technical sublessors or not, they retained, by their stipulations for royalties, an economic interest in the oil, in place, identical with that of a lessor", and because of this retention of an economic interest through the medium of royalties was, to the extent of such interest, entitled to a reasonable allowance for depletion. The ground upon which the opinion in the *Palmer* case, *supra*, was based, was the retention of an economic interest by the taxpayer of the oil in place. The holding in that case then is not controlling in the instant case because the taxpayer herein retained no economic interest in the oil in place, so far as the payments here in controversy are concerned.

The contract of October 3, 1927, constituted an absolute sale of not only its interest in the leases, permits, and drilling agreements transferred, which might be termed operating agreements, but also *all* of the oil and gas in place, for the contract specifically provided that the Honolulu Consolidated Oil Co. acquired "the sole ownership of and the right to sell or otherwise dispose of, *all* oil and/or gas and derivative products produced in, on or upon said properties" and further that the petitioner "shall have no interest in or to any of said properties whatsoever." The consideration in the definite amount of $2,000,000 was not in any way dependent upon the production of oil from the properties. It is therefore obvious that the petitioner did not retain any economic interest or investment in the oil and gas, in place, so far as the payments here in controversy are concerned, subject to depletion on extraction, but looked only to the independent personal liability of the purchaser for the receipt of the agreed purchase price of $2,000,000 pursuant to the terms of the contract of sale.

We conclude that the cash payments of $400,000 received by petitioner in each of the years 1928 and 1929 constituted proceeds from the sale of a capital asset and were not *gross income from the property* within the meaning of that phrase as used in section 114 (b) (3), *supra*, and therefore petitioner is not entitled to a depletion allowance of 27½ percent thereof under the provisions of that section. *William Fleming*, 31 B. T. A. 623; affd., 82 Fed. (2d) 324; and *E. F. Simms*, 28 B. T. A. 988, 1028, 1029. Cf. *Comar Oil Co.*, 24 B. T. A. 688; affd., 64 Fed. (2d) 965; certiorari denied, 290 U. S. 652.

*Decision will be entered under Rule 50.*