*137 OPINION.
TurneR:
The first issue raised by the petitioner has previously been considered by the Board, in Bankline Oil Co., 33 B. T. A. 910. In that case, as in this, the petitioner relied on Burnet v. Coronado Oil & Gas Co., 285 U. S. 393, to sustain the proposition that income derived from the development and operation of an oil lease obtained from the State of California was exempt. The lease in that case was *138 made under authority of the same California statute and the lands covered by the lease were located in the same county as in this case. We held, under authority of Burnet v. Jergins Trust, 288 U. S. 508, that the income was taxable. The first issue is accordingly determined for the respondent, and it becomes necessary to consider the petitioner’s alternative contention.
In determining- the deficiencies heroin, the respondent computed the depletion deduction by eliminating from petitioner’s gross income the amounts received by the Oil Co. under the agreement of December 19, 1929. The petitioner contends that this was error. It is her position that she was the sole owner of lease No. 93 and is entitled, under section 114 (b) (3) of the Revenue Act of 1928,[1] to a depletion deduction computed on the total gross income from the lease. She insists that under the agreement the Oil Co. acquired no interest in the lease or the production therefrom, and that the amounts received by it were received not as income from any operation of the property on its own account, but from her as compensation for services performed in her behalf.
In support of her contention that the development and operation of the lease was her individual enterprise and that the Oil Co. was employed for a cash compensation and had no interest in the production from the lease, the petitioner places great reliance in recurrent recitals in the agreement designating her as the “Owner” and the Oil Co. as the “Contractor”, and the further provision to the effect that all of the oil and gas, when produced, belonged to her. Mere assertion, however, that the legal effect of a contract is thus and so is not sufficient to make it so, where the provisions of the contract itself show it to be otherwise. Here the Oil Co. by the terms of the agreement relieved the petitioner of all risks and burdens connected with the development and operation of the lease. For a right to two-thirds of the proceeds from the sale of oil and gas, it agreed to do and perform all acts required of her under lease No. 93, which she had received from the state, while the petitioner, for merely holding title to the lease in her name and without financial outlay on her part, was to receive and retain one-third of the proceeds, subject only to payment of one-third of the taxes on the property and production and one-third of the cost of manufacturing casinghead gasoline. There is some reference to an obligation on her part to stand the cost of selling and marketing the production *139 of tlie lease, but a closer inspection of tlie contract and the stipulation of facts filed herein discloses that these expenditures were to be made out of proceeds from such sales before division thereof between the parties. It does not even appear that the petitioner actively took any part in the marketing of the production, and, as a matter of fact, we might well be justified, on the record before us, in concluding that this function was also performed by the Oil Co.
Any doubt that the development and operation of the lease was the enterprise of the Oil Co. and not of the petitioner is removed by the supplemental contract between the parties, also executed on December 19, 1929. That contract discloses that the only cash investment in the venture was made by the Oii. Co. and by that contract the Oil Co. released the petitioner from any obligation to reimburse it for any part of the sums previously expended and carried on its books as investment expenses. The schedule of these expenditures shows that a substantial portion thereof was used in effecting compromises and settlements with adverse claimants to the title, which was held in the name of the petitioner. In a subsequent paragraph, the Oil Co. agreed to reimburse the petitioner for all amounts expended by her in the acquisition of the lease. These expenditures amounted to $176,043.84 and covered, among other things, legal and engineering fees.
The California statute very likely supplies the reasons for the repeated assertions by the parties that the petitioner retained ownership of the lease and that the Oil Co., the “Contractor”, was receiving a cash compensation from her for services rendered in her behalf. In one clause of the lease granted by the state the petitioner specifically agreed to observe the provisions of section 12 of the act under which the lease was granted. That section provides in part that “no person, association or corporation, shall take or hold, under the terms of this Act, more than one oil or gas permit or lease.” It further provides that any interest held in violation of the act shall be forfeited by appropriate proceedings in the superior court for the county in which the property is located. The agreement between the parties discloses that the Oil Co. was already the holder of lease No. 92, and, under the section just referred to, could not have obtained or held in its own name the lease involved in this case.
Under the circumstances and facts of this case, it might well be argued that, while the petitioner obtained and held the legal title to the lease, she at all times was acting for the Oil Co. It is apparent from the supplemental agreement that the Oil Co. and not the petitioner, prior to the contract of December 19, 1929, had expended $256,874.39 in prospecting and proving the property, in drilling the first well and in settling adverse claims to the title. It also agreed *140 to reimburse the petitioner in full for all expenditures made by her in obtaining the lease. We are further of the opinion that if it be conceded that the petitioner obtained the lease from the state for her own account, a very strong argument could be made that the contract of December 19, 1929, was in effect a sublease of her interest in the property, under which she retained for herself only a right to share in the proceeds from the sale of the oil' and gas produced.
We are not here concerned, however, with a particular designation of the respective interests of the petitioner and the Oil Co. in the property in question, nor with any question as to whether or not the agreement between the parties is within or without the spirit and letter of the lease and the California statute, but with a determination of the depletion deduction allowable to the petitioner in respect of the interest, whatever it may be called, of the petitioner in the lease. In Palmer v. Bender, 287 U. S. 551, the Supreme Court, in considering the interest necessary as the basis for a depletion deduction, said: “The language of the statute is broad enough to provide, at least, for each case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of oil, to which he must look for a return of his capital.” See also San Martinez Oil Co., 25 B. T. A. 218, and W. S. Green, 26 B. T. A. 1017. In Helvering v. Twin Bell Oil Syndicate, 298 U. S. 312, the Supreme Court, although dealing there with apportionment of the depletion allowance between lessor and lessee, clearly indicated that the total depletion allowance of all parties who own interests in any oil property may not exceed 27% percent of the gross income from the property, and that the deduction permitted to any one party is limited to a proportionate part of the total allowance based on his interest in the total production. In our opinion, it is definite, and clear that the petitioner and the Oil Co., under the contracts between them, provided for the development and operation of lease No. 93 and for definite interests to each in the production therefrom. These interests were to be one-third and two-thirds, respectively, with certain minor adjustments prescribed by the terms of the agreement. We accordingly hold that the petitioner may not include in her gross income, for the purpose of computing her depletion deduction in respect of lease No. 93, any amounts received by the Oil Co. as its share in the proceeds from the sale of oil, gas, and casinghead gasoline in accordance with the terms of the agreement of December 19, 1929.
Since the second issue has been determined for the respondent, the alternative issue raised by his answer need not be considered.
Reviewed by the Board.

Decision will be entered under Bule SO.

SeC. 114. (b) Basis for depletion.—
****** *
(3) Percentage depletion for oil and gas wells.- — In the case of oil and gas wells the allowance for depletion shall he 27% per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.