ESTATE OF H. M. HOLLOWAY, DECEASED, HARVEY S. HOLLOWAY, EX-
ECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT.

MARY L. HOLLOWAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 11426, 11428.   Promulgated June 7, 1948.

*A. Calder Mackay, Esq.,* and *Adam Y. Bennion, Esq.,* for the
petitioners.

*E. A. Tonjes, Esq.,* for the respondent.

OPINION.

DISNEY, *Judge*: Both petitioners and respondent are in accord that the question here to be determined is to be governed by section 114 (b) (1) and (2) of the Internal Revenue Code.[1] The petitioners contend

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

\* \* \* \* \* \* \*

(b) BASIS FOR DEPLETION.—

(1) GENERAL RULE.—The basis upon which depletion is to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property, except as provided in paragraphs (2), (3), and (4) of this subsection.

(2) DISCOVERY VALUE IN CASE OF MINES.—In the case of mines (other than metal, bauxite, coal, fluorspar, flake, graphite, vermiculite, beryl, feldspar, mica, talc (including pyrophyllite), lepidolite, spodumene, barite, potash, ball, sagger, and china clay, phosphate rock, rock asphalt, trona, bentonite, gilsonite, thenardite, or sulfur mines) discovered by the taxpayer after February 28, 1913, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter, if such mines were not acquired as the result of purchase of a proven tract or lease, and if the fair market value of the property is materially disproportionate to the cost. The deple-

that the meaning of these sections turns on the phrase "the property"; that that phrase has reference to the mineral reserves or the physical mine; and that a depletable economic interest was had by H. M. Holloway, not only during the original written lease, as determined by the Commissioner, but at all times during the mining of gypsum.

Respondent contends that the meaning of "property" as used in section 114 (b) of the Internal Revenue Code has been the subject of considerable litigation and that its meaning "has become quite well crystallized," and cites paragraph 24.34, vol. 4, Mertens Law of Federal Income Taxation; *Sneed* v. *Commissioner*, 119 Fed. (2d) 767, affirming 40 B. T. A. 1136; reaffirmed, 121 Fed. (2d) 725; G. C. M. 22106, C. B. 1941–1, p. 245; and *Berkshire Oil Co.*, 9 T. C. 903. These decisions and articles, he contends, establish that the term "the property" means each separate interest in each separate tract or parcel, so that petitioner had no depletable interest after the end of the first written lease. We have examined each case and article, but find none of them to go as far as respondent would have us go in this case. It appears to us that the primary thought connected with these cases and articles is the division of a tract into smaller tracts, either by outright sale or by leases. We have found no statement that concerns itself with the length of the lease given; that is, whether a "new interest" is created when an old lease expires and the same parties enter into a mineral lease on the same terms.

There can be no doubt that the term "the property" can and does have various meanings. What Congress had in mind when the term was used in the enactment of section 114 (b) of the Internal Revenue Code must be determined by the surrounding words supporting the term. Petitioner argues that the term "the property" as used in the code means "the physical mineral deposit, rather than the legal or equitable interests therein of the respective parties." To support his argument, the petitioner calls our attention to the statutory language stated, that "The depletion allowance * * * shall not exceed 50 per centum of the net income of the taxpayer * * * *from the property upon which the discovery was made* * * *." (italics supplied); and argues that "people generally do not think of a discovery as having been made on an intangible lease, or on an intangible royalty interest. The discovery is made 'upon' the 'land'." We concur that the discovery

---

tion allowance under section 23 (m) based on discovery value provided in this paragraph shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property upon which the discovery was made, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to discovery value. Discoveries shall include minerals in commercial quantities contained within a vein or deposit discovered in an existing mine or mining tract by the taxpayer after February 28, 1913, if the vein or deposit thus discovered was not merely the uninterrupted extension of a continuing commercial vein or deposit already known to exist, and if the discovered minerals are of sufficient value and quantity that they could be separately mined and marketed at a profit.

is made upon the land and not upon the lease on the land. This we think is some indication of the intention of Congress as to the meaning of the term "the property." A better indication of the meaning can perhaps be found in the sentence of the section of the code where it is stated that "the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter, if *such mines* were not acquired as the result of purchase of a proven tract or lease * * *." (Italics supplied.) It is clear that the phrase "such mines" relates back to the term "the property" and limits it to the mines rather than extending the meaning to the interest in the property, as contended by respondent. *Palmer* v. *Bender*, 287 U. S. 551, establishes the rule that it is the product rather than the legal interest that gives the basis for depletion. There the Court was considering section 214 (a) (10) of the Revenue Act of 1921, a section containing language similar to that of the section of the code now under consideration. The part of the act referred to is as follows:

* * * *Provided further,* That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter * * *.

Section 114 (b) (2) of the Internal Revenue Code states the "basis for depletion," but in computing the income tax, section 23 (m), Internal Revenue Code,[2] must be applied and that section provides that, "In case of leases the deduction shall be equitably apportioned between the lessor and lessee." Any other conclusion would make useless this part of the code, because, if the word "property" meant the lessee's interest or the lessor's interest, there would be nothing to apportion between lessor and lessee.

Section 114 of the Internal Revenue Code provides that the basis upon which discovery depletion is to be allowed in respect of any property shall be the fair market value of the property at the date of the discovery, if such mines were not acquired as the result of purchase of a proven tract or lease. The decedent did not acquire "the

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * * *

(m) DEPLETION.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this subsection for subsequent taxable years shall be based upon such revised estimate. In the case of leases the deductions shall be equitably apportioned between the lessor and the lessee. * * *

property," that is, the mines, as the result of purchase of a proven tract or lease. He acquired *"the mines"* by a lease of June 1, 1940, and the date of the discovery of the gypsum was January 1, 1942. (Italics supplied.) He continued in uninterrupted possession of the mines after that date.

In our view, under the above principles, there was in the decedent such economic interest in the gypsum deposits themselves as to confer depletable interest not only during the first lease, but during the extension thereof on the same terms; but we hold for the petitioner on additional and broader grounds. The decedent had possession of the premises when the discovery was made, not only under a written lease, but under a claim founded on oral assurances from Lang that he could continue mining the gypsum so long as it was mineable. Though the respondent urges that writing was required for validity of such a right, it is obvious that we have here no mere question of enforceability of an executory oral agreement, but a case of possession taken and development improvements made; in short, an executed contract, with the doctrine of part performance applicable.

It is to be noted that there has never been an attack upon the decedent's title or right to mine, though continued after the two written terms without written authority, and even after Lang's death. On the contrary, Occidental, the owner, in 1946 specifically, and in writing, "confirms to Holloway," after reciting that he had discovered and produced the gypsum "at all times with the consent and approval of Occidental" and that Lang had "(with the approval of Occidental) assured Holloway * * * that Holloway would be permitted to extract and remove the same as long as * * * produced from said land in paying quantities." If there was frailty in decedent's title at first, title was in effect ratified by this instrument; but more important, it appears therefrom that Occidental, and Lang for it, did give Holloway the oral assurance that he could produce the gypsum. His operations, therefore, involving discovery and development, in our opinion, gave him a depletable economic interest. The situation is closely parallel to that in *Champlin* v. *Commissioner*, 78 Fed. (2d) 905. There Champlin produced oil while his title was being litigated and prior to the time it was finally vindicated. The court allowed discovery depletion, referring to *Palmer* v. *Bender*, *supra*, as a case where depletion was allowed an assignor who retained no reversionary interest in the oil reserves and had no form of legal interest in the mineral content, and stating that income and depletion go hand in hand, that the petitioner had developed the oil in the face of a title hazard and must pay full tax on the income reported, and that no reason could be seen for denying depletion because of the hazard. In *Obispo Oil Co.* v. *Welch*, 89 Fed. (2d) 860 (reversed, but on other

grounds, 301 U. S. 190) one with a mere possessory interest in Government lands discovered oil thereon prior to securing a lease from the Government. It was contended that depletion was allowable only from the date of the lease. The court pointed out that possessory right, with claim of title, not finally adjudicated, under placer mining laws had been held sufficient to show economic interest, and held that prior to the lease there was such economic interest in the company in possession as to give right to depletion.

We can see no valid distinction between such cases and the instant situation. Clearly, the respondent's idea that there was here mere license is not tenable and the cases cited do not support it. We hold that this petitioner had such economic interest throughout the taxable years as to be basis for depletion upon a discovery basis. As stipulated in the event of such holding,

*Decision will be entered under Rule 50.*