**UTAH SALT COMPANY, Inc., Appellant,**

v.

**Roland V. WISE, District Director of Internal Revenue, Appellee.**

**No. 8535.**

United States Court of Appeals
Tenth Circuit.

Jan. 6, 1967.

Dale E. Anderson, Salt Lake City, Utah (Fabian & Clendenin, Salt Lake City, Utah, with him on the brief), for appellant.

Thomas L. Stapleton, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys. Dept. of Justice, and William T. Thurman, U. S. Atty., of counsel, with him on the brief), for appellee.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and CHILSON, United States District Judge.

CHILSON, District Judge.

The appellant taxpayer instituted this action in the lower Court seeking a re-

fund of corporate income taxes paid for the years 1960 and 1961. Appellant claims it is entitled to a deduction for depletion of mineral deposits under § 611 and § 613 of the Internal Revenue Code of 1954, which deduction was not allowed.

The appellant appeals from the judgment of the District Court denying its claims for refund.

The essential facts are not in dispute. Bonneville, Ltd. was the owner of several thousand acres of land in a low area in the Great Salt Lake Desert in which storm waters containing potash and salt collected. The evaporation of the water deposited the potash and salt on and under the surface of this area. For many years prior to the years in question, Bonneville had been engaged in the extraction of potash from this area by the following processes. Beneath the surface of the area is a brine which contains potash and salt. Bonneville constructed large ditches twenty feet in depth and six to ten feet wide to collect this brine. At the upper end of these ditches, shallow ponds were constructed by the erection of dikes and the brine was pumped from the ditches into the ponds. Seepage from the ponds was prevented by a protective ditch also filled with brine which encircles each pond.

During the summer months when the brine is pumped into the ponds, the water in the brine evaporates causing the salt to precipitate on the pond bottom. At a certain point, potash also begins to precipitate out of the brine. At this juncture, the brine is pumped into the Bonneville processing plant and the potash is allowed to precipitate out in what is known as the froth flotation process.

The salt which is deposited on the pond bottom creates an annual layer of approximately six inches. During the winter months when the pond lies dormant, this layer adheres to the previous layer and becomes so hard that it forms a concrete like mass and cannot economically be removed. This annual deposit of salt gradually decreases the depth of the evaporation pond to a point where it becomes economically unfeasible to continue to build up the dikes and at that point a new pond must be constructed.

In order to avoid this attrition of ponds, Bonneville in 1957 began to experiment with various methods of removing the salt from the ponds, one of which was scraping the pond bottom by a drag prior to the deposit of a new layer of salt. This provided a cleavage line between the new and old layers of salt and the new layer did not adhere to the old and could then be scraped and placed in piles or windrows.

One Roberts, who knew of Bonneville's experiments, realized that by using this process, Bonneville would have large quantities of salt for which it would have no use. On April 29, 1958, Roberts and three associates executed an agreement with Bonneville which was thereafter assigned to the appellant, which provided, among other things, that appellant would have the right for five years to extract and process salt from the Bonneville properties; Bonneville to provide sufficient salt to meet the reasonable needs of appellant in piles and windrows on the property; appellant to construct a processing plant on ground provided by Bonneville; appellant to process and sell a minimum number of tons of salt in each year and pay Bonneville a royalty based on the selling price within ninety days after shipment to purchasers; and Bonneville agreed not to sell salt in competition with the appellant.

In the spring of 1958, Bonneville scraped the bottom of the evaporating pond to prepare a cleavage line and in the winter of 1959, Bonneville, at its expense, employed a company to bulldoze the new layer of salt into piles and windrows. The same process was repeated the next year. The salt which the appellant processed during the tax years in question came solely from these piles and windrows and was transported

by appellant from the piles and windrows to its processing plant by trucks.

Prior to appellant's taking the salt from the piles and windrows, it had no control and it did not exercise any supervision over the salt or Bonneville's processes and operations in extracting the salt from the brine or its removal from its place of deposit in the evaporating pond.

Section 611 of the Internal Revenue Code provides:

"In the case of mines * * * or other natural deposits * * * there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion * * * ",

and Section 613 establishes the percentage depletion allowances.

The Treasury Regulations on Income Tax (1954 Code) § 1.611–1(b) (1) provides:

"*Annual depletion deductions are allowed only to the owner of an economic interest in mineral deposits or standing timber.* An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place * * * and secures, by any form of legal relationship, income derived from the extraction of the mineral * * * to which he must look for a return of his capital. But a person who has no capital investment in the mineral deposit or standing timber does not possess an economic interest merely because through a contractual relation he possesses a mere economic or pecuniary advantage derived from production." (Emphasis supplied.)

Beginning in 1933 with the case of Palmer v. Bender, 287 U.S. 551, 53 S. Ct. 225, 77 L.Ed. 489, the Supreme Court has consistently recognized that one having an "economic interest" in minerals in place is entitled to a depletion deduction. The Court said in Palmer:

"The language of the statute (authorizing depletion deduction) is broad enough to provide, at least, for every case in which the taxpayer has ac-

quired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital." (287 U.S. at 557, 53 S.Ct. at 226.)

The Court also said that the deduction is not "dependent upon the particular legal form of the taxpayer's interest in the property to be depleted * * * " (287 U.S. at 557, 53 S.Ct. at 226).

Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897 (1938), reaffirmed the test laid down in Palmer and said:

"But the phrase 'economic interest' is not to be taken as embracing a mere economic advantage derived from production, through a contractual relation to the owner, by one who has no capital investment in the mineral deposit." (303 U.S. at 367, 58 S.Ct. at 618).

In Parsons v. Smith, 359 U.S. 215, 79 S.Ct. 656, 3 L.Ed.2d 747 (1959), the Court pointed out that the principles declared in the Palmer case have been recognized and applied by every subsequent decision of the Court that has treated with the subject and that the first Regulations prescribed under the Internal Revenue Act of 1939 adopted almost literally the language we have quoted from *Palmer* and *Bankline* as the test to be administratively applied in determining what interest in mineral deposits are entitled to the depletion allowance. Those regulations are essentially the same as the present applicable regulations § 1.611–1(b) (1), supra.

In 1965, the Supreme Court in Paragon Jewel Coal Company, Inc. v. Commissioner of Internal Revenue, 380 U.S. 624, 85 S.Ct. 1207, 14 L.Ed.2d 116, again expressed its approval of the "economic interest" test by stating

"This test was first enunciated in Palmer v. Bender, 287 U.S. 551, 557 [53 S.Ct. 225, 226, 77 L.Ed. 489] (1933), and has since become the touchstone of decisions determining

the eligibility of a party to share in the depletion allowance." (380 U.S. at 633, 85 S.Ct. at 1211).

We conclude, therefore, that if appellant had an "economic interest" in the salt in question, as that term is defined in the foregoing case law and administrative regulations, it should prevail. If not, its claim should be denied. As we have noted, one of the requirements of an "economic interest" is the acquisition by investment of an interest in the mineral in place.

From the evidence, it is clear that the appellant had not "acquired by investment" any interest in the salt "in place." Whether we consider the salt as being "in place" in the brine or as being "in place" in the bottom of Bonneville's evaporation pond is immaterial. The appellant "acquired by investment" no interest in the salt in either place.

The investment in the salt "in place" was solely Bonneville's investment. It was Bonneville which owned the land and dug the ditches to collect the brine, constructed the evaporation ponds and provided the pumps to convey the brine to the ponds. It was Bonneville which extracted the salt from its place of deposit in the evaporation ponds and piled it where it became available to appellant for processing and sale.

Appellant asserts that under the agreement it has the right to perform each of these processes which were performed by Bonneville in extracting the salt from the brine and removing it from the evaporation pond and that this right gives it an economic interest.

Whether or not the agreement is subject to appellant's construction is immaterial. The point is that the appellant in or prior to the years in question made no investment in the salt in place. The salt which it processed was obtained by it not by virtue of any ownership or interest in the salt in place but by virtue of a provision of the agreement that Bonneville would extract the salt from its "in place" deposit in the brine and evaporation pond and place it in piles and windrows for the use of the appellant.

The appellant's investment was in the plant and equipment to remove the salt from the piles, process and ship it and this investment is recoverable by depreciation not depletion. Parsons v. Smith, supra, 359 U.S. p. 225, 79 S.Ct. 656.

We conclude the appellant had no economic interest in the salt in question and is not entitled to a deduction for depletion.

The judgment of the District Court is affirmed.