**FILTROL CORPORATION**

**v.**

**The UNITED STATES.**

**No. 295–64.**

United States Court of Claims.

Nov. 14, 1973.

Stuart T. Peeler, Los Angeles, Cal., for plaintiff. Fuller Holloway, Washington, D. C., attorney of record. J. Patrick Whaley, and Musick, Peeler & Garrett, Los Angeles, Cal., of counsel.

Frances Foltz Kane, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Gilbert E. Andrews, Jr., and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, KASHIWA and BENNETT, Judges.

## ON PLAINTIFF'S MOTION TO DISMISS AND ON THE MERITS

### PER CURIAM:

Plaintiff brought this suit to recover Federal income taxes for the years 1953 through 1957, seeking to recover the partial disallowance of its depletion deductions at the Cheto mine and the amount by which its depletable gross income, which represented the cost of containers, was reduced by the Commissioner of Internal Revenue. The issue relating to container costs was abandoned prior to trial. In its amended answer, the defendant raised two defenses by way of set-off: (1) plaintiff had no economic interest in the Cheto mine; and (2) plaintiff had taken excess depletion on all of its mines because it had used an end-product cutoff point.

After a lengthy trial before our former trial judge, James F. Davis, the trial judge filed his opinion, findings of fact, and recommended conclusion of law in which all issues were determined in favor of the defendant.

On August 30, 1973, after plaintiff had filed its exceptions to the trial judge's findings of fact, and both parties had filed their briefs to the court, plaintiff filed a motion to dismiss its petition with prejudice. Alternatively, plaintiff withdrew its Notice of Intention to Except to those findings of fact which relate to the economic interest issue, and moved the court to adopt such findings of fact, the trial judge's opinion relating to the economic interest issue, and his recommended conclusion of law.

After hearing oral argument on the motion to dismiss and on the merits, the court finds that the granting of plaintiff's motion to dismiss at this stage in the proceedings would be prejudicial to defendant and, in the exercise of discretion, the court denies the motion. Stevenson v. United States, 197 F.Supp. 355 (M.D.Tenn.1961). See also Church of Scientology of Hawaii v. United States, 485 F.2d 313 (9th Cir.), decided September 6, 1973, and cases cited therein.

However, the court concludes that the granting of plaintiff's alternative motion would not prejudice defendant's rights. Such action gives defendant the benefit of an opinion and detailed findings of fact on the economic interest issue and forecloses plaintiff's right to recover on any of the grounds alleged in the petition. It is therefore unnecessary for the court to reach or consider the issue raised by defendant's plea of set-off that plaintiff had taken excess depletion on all of its mines because it had used an end-product cutoff point.

Therefore, the court affirms and adopts the trial judge's Findings of Fact 1 through 13, 16 through 29, and 31, his opinion on the economic interest issue, and his recommended conclusion of law. Accordingly, the court concludes that plaintiff is not entitled to recover and its petition is hereby dismissed.

### OPINION OF TRIAL JUDGE

JAMES F. DAVIS, Trial Judge:

*The "economic interest" issue*

Section 23(m) of the 1939 Code and § 611(a) of the 1954 Code provide that the owner of "mines * * * [and] other natural deposits" shall be entitled

to a "reasonable allowance for depletion * * * according to the particular conditions of each case." Treas.Reg. 118, § 39.23(m)–1 [1939 Code], and Treas.Reg. 1.611–1(b) [1954 Code] provide that the depletion deduction is allowable to the owner of an "economic interest" in mineral deposits, but not to one who has only an "economic advantage derived from production." Treas. Reg. 118, § 39.23(m)–1 states in pertinent part:

> (b) * * * An economic interest is possessed in every case in which the taxpayer has acquired, by investment, any interest in mineral in place * * * and secures, by any form of legal relationship, income derived from the * * * sale of the mineral * * *, to which he must look for a return of his capital. But a person who has no capital investment in the mineral deposit * * * does not possess an economic interest merely because, through a contractual relation to the owner, he possesses a mere economic advantage derived from production. Thus, an agreement between the owner of an economic interest and another entitling the latter to purchase the product upon production or to share in the net income derived from the interest of such owner does not convey a depletable economic interest.

The "economic interest" concept had its genesis in Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933), and that concept has been elaborated upon and refined in a host of judicial decisions, among others Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956), and Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897 (1938).

When a taxpayer is the owner in fee or a lessee of mineral property, few problems arise since the Code expressly provides that the depletion deduction "shall be equitably apportioned between the lessor and lessee." Most difficulties stem from situations where the taxpayer is not an owner in fee or a lessee, but rather has some contractual relationship with one or the other of the owner or lessee (or both) which the taxpayer contends amounts to an "economic interest." Such is the case here.

During the years in issue, plaintiff acquired some of its calcium bentonite clay from the Cheto mine in Arizona. The Cheto bentonite was shipped to Vernon or Jackson for processing. Prior to the 1950s (particularly in the 1920's and 1930's), plaintiff obtained bentonite from the Chambers mine, near the Cheto property. In the late 1930's plaintiff's geologists and mining engineers discovered the Cheto deposit and found the clay to be suitable for plaintiff's use. The mining contractor at the Chambers mine (McCarrell) thereafter obtained leases (along with his co-lessee Gurley) to the Cheto property from the Santa Fe Pacific Railroad Company, which owned the land in fee. McCarrell then moved his mining operations to the Cheto mine and commenced mining Cheto clay which was disposed of to plaintiff and others. Later, McCarrell' and Gurley acquired ownership in fee to some Cheto property.

In 1944, McCarrell and Gurley entered into an agreement with plaintiff whereby McCarrell and Gurley agreed to conduct mining operations and plaintiff agreed, in essence, to purchase the mined clay and to compensate McCarrell and Gurley on the basis of actual costs of mining plus a per-ton fee for clay mined. Included in the payment was a 10-cents-per-ton royalty, to be paid to Santa Fe, the lessor. In 1949, a new agreement was entered into, much like the 1944 agreement. The details of the 1949 agreement and the operations thereunder are set out in findings 20–29. In essence, McCarrell became the mining contractor by agreement with his co-lessee Gurley, and plaintiff had exclusive rights to certain of the mined clay on a mining cost-plus-fee basis.

McCarrell and Gurley continued, however, to sell Cheto clay to others from property not covered by agreement with plaintiff. During the 1950's problems developed between plaintiff and McCarrell (findings 25–28) which ultimately resulted in plaintiff's getting leases to part of the Cheto property directly from Santa Fe in 1963 and 1964.

Defendant contends that plaintiff's 1949 agreement with the lessees was simply an exclusive sales contract and gave rise to nothing more than an "economic advantage" in the Cheto clay, rather than a depletable "economic interest." Plaintiff, on the other hand, says that its relationship with the lessees, lessor and the mining contractor was such that it was the "real party in interest" to the lease and that, accordingly it acquired by investment, an interest in the clay mineral in place. Plaintiff says that it was the real party in lease negotiations between McCarrell and Gurley, and Santa Fe; that the lease was granted to McCarrell and Gurley simply as accommodation parties; and that it had a substantial investment in the clay in place, both financially and through control of the mining. In particular, plaintiff says that it exercised such control over mining that it was the lessee in fact, and that its expenditures for research and development of Cheto clay, as well as expenditures on roads and the like at the mine, constituted a substantial investment in the clay mineral in place.

The record supports defendant and establishes the following:

(a) Filtrol was not owner, lessee, sublessee, or mining contractor of the Cheto property involved in this suit during the years in issue. (Findings 20–28.) *See* CBN Corp. v. United States, 364 F.2d 393, 176 Ct.Cl. 861 (1966), cert. denied, 386 U.S. 981, 87 S.Ct. 1284, 18 L.Ed.2d 228 (1967); Tidewater Oil Co. v. United States, 339 F.2d 633, 638, 168 Ct.Cl. 457, 466 (1964). Rather, Filtrol was a purchaser of clay from the lessees, McCarrell and Gurley, on an exclusive sale, cost-plus-fee basis; and Filtrol's payments to the lessees were the price paid for the clay and did not constitute an investment in the clay mineral in place. (Finding 21.) *Cf.* Coleman v. United States, 388 F.2d 337, 181 Ct.Cl. 982 (1967); CBN Corp., *supra.*

(b) The 1949 lease between McCarrell and Gurley, and Santa Fe, was not contingent upon Filtrol's making any investment in the mineral in place or in processing facilities. *Cf.* Food Mach. & Chem. Corp. v. United States, 348 F.2d 921, 172 Ct.Cl. 313 (1965). Though Filtrol participated in the negotiations leading up to the 1949 lease, the evidence does not support the inference that Filtrol was an indispensable or silent party to the lease. In fact, Filtrol expressly refused to become a lessee or sublessee. Santa Fe was willing to lease property directly to McCarrell and Gurley, had done so since 1939, and continues to do so. There is no evidence that in 1948, Santa Fe would have preferred to lease to Filtrol. Santa Fe's interest was simply in assuring itself that (i) the lessees would be able to meet the tonnage requirements under the lease, and (ii) Santa Fe would be able to get freight revenues from transporting mined clay. Filtrol's exclusive purchase agreements with the lessees satisfied Santa Fe in these regards. (Finding 20.) *Cf. Food Machinery, supra.*

(c) Filtrol's participation in directing and overseeing the mining operations (including financing the building of a road and loading ramp, and furnishing technical assistance through geologists and engineers) did not constitute an investment in the Cheto clay in place, but rather was incident only to Filtrol's desire to minimize mining costs and ensure the quality and quantity of mined clay. (Findings 21, 24.) *Cf.* Parsons v. Smith, 359 U.S. 215, 79 S.Ct. 656, 3 L. Ed.2d 747 (1959).

(d) Filtrol's expenditures relating to research and development of Cheto clay

did not constitute an investment in the mineral in place, but rather constituted expenditures for product and customer development. (Finding 31.) Filtrol did not build its Vernon, California plant (or any other plant) as incident to, or in anticipation of, the lease agreement of 1949. Filtrol did not build the Vernon plant (or any other plant) expressly and solely to process Cheto clay, nor were any of Filtrol's plants dependent for operations solely on Cheto clay and the Cheto mine. (Findings 16, 27.) *Cf. Food Machinery, supra*; Scofield v. La Gloria Oil & Gas Co., 268 F.2d 699 (5th Cir. 1959), cert. denied, 361 U.S. 933, 80 S.Ct. 372, 4 L.Ed.2d 355 (1960).

In short, Filtrol did not acquire by investment an interest in the Cheto clay mineral in place. Filtrol, through its contractual relationship with the lessees of the Cheto property, possessed a mere economic or pecuniary advantage in the mining and production of Cheto clay. Accordingly, Filtrol had no economic interest in the Cheto mine during the years in issue and is not entitled to percentage depletion deductions for the years 1953–57.

The result here reached is fully consistent with the Ninth Circuit's decision in Grimes v. United States, 295 F.2d 623 (1961). That case held that for the year 1953, McCarrell and Gurley, as owners in fee of part of the Cheto property and lessees of Santa Fe for another part, had an "economic interest" in the Cheto mine with respect to clay mined and sold to Filtrol. To hold here that Filtrol had the same "economic interest" would permit, in effect, a multiple depletion allowance for the same property (at least for the year 1953); would be contrary to the facts here established; and would be inconsistent with the *Grimes* decision. Plaintiff has made no persuasive showing that it should prevail or that *Grimes* was decided incorrectly.*

---

* Filtrol appeared in the *Grimes* litigation as amicus curiae and argued that it, rather than McCarrell and Gurley, was the lessee of the Cheto property. The Government

supported that argument, in its attempt to deny McCarrell a depletion deduction, but the court expressly refused to consider it. See *Grimes, supra*, n. 2.