## HADDOCK MINING CO. v. UNITED STATES.

### No. 3163.

United States District Court
M. D. Pennsylvania.
Aug. 7, 1950.

———◆———

Charles B. Waller, Wilkes-Barre, Pa., Stephen T. Dean, Donald McDonald, of Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for plaintiff.

Arthur A. Maguire, U. S. Atty., Lester L. Gibson, Sp. Asst. to the Atty. Gen., Scranton, Pa., for defendant.

WATSON, Chief Judge.

This is an action by Haddock Mining Company to recover income taxes and declared value excess profits taxes paid for the years 1942 and 1943. The case was tried before the Court without a jury.

The evidence shows that the only question is whether Haddock, under certain agreements with Candlemas Collieries Company and Coxe Brothers & Company, Inc. in respect to the mining of coal from certain coal tracts, had such an economic interest in the coal in place in these certain coal tracts as to be entitled to a deduction for depletion on a percentage of income basis on its total gross income derived from such mining under Sections 23 (m) and 114(b)(4) of the Internal Revenue Code, 26 U.S.C.A. §§ 23(m) and 114 (b)(4), and regulations promulgated thereunder.

Section 23 of the Code provides in part: "In computing net income there shall be allowed as deductions: * * * (m) In the case of mines * * * a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary." Section 114(b)(4) provides in part: "The allowance for depletion under section 23(m) shall be, in the case of coal mines, 5 per centum * * * of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23(m) be less than it would be if computed without reference to this paragraph."

The Regulations promulgated under these sections of the Code, in 26 C.F.R. 29.23(m)-1, provide in part: "Under such provisions, the owner of an economic interest in mineral deposits * * * is allowed annual depletion deductions * * * An economic interest is possessed in every case in which the taxpayer has acquired, by investment, any interest in mineral in place * * * and secures, by any form of legal relationship, income derived from the severance and sale of the mineral * * * to which he must look for a return of his capital. But a person who has no capital investment in the mineral deposit * * * does not possess an economic interest merely because through a contractural relation to the owner, he possesses a mere economic advantage derived from production. Thus an agreement between the owner of an economic interest and another entitling the latter to purchase the product upon production or to share in the net income derived from the interest of such owner does not convey a depletable economic interest."

From the evidence and the stipulation of the parties, the Court makes the following findings of fact:

1. Haddock Mining Company, Plaintiff, hereinafter referred to as "taxpayer", was incorporated under the laws of Pennsylvania in 1915 and has been engaged in the operation of anthracite coal properties in Pennsylvania.

2. Taxpayer entered into two written agreements with Candlemas Collieries Company, one dated November 6, 1923, and designated by the instrument as an "Indenture of Lease", and the other dated May 14, 1924, and designated by the instrument as a "Memorandum of Agreement". Under these agreements, Candlemas Collieries Company delivered possession of certain coal properties, described in said agree-

ments and referred to as "Candlemas" and "Salem Hill", to the taxpayer to be operated by the latter under the terms of the agreement of November 6, 1923.

3. Under the foregoing agreements of 1923 and 1924, taxpayer acquired the right to mine, remove and dispose of all coal in and under the premises; to use all surface land, buildings, fixtures, machinery, tools, equipment, improvements and personal property on the premises; and to hold the premises for fifty years with privilege of renewal, provided that either party could sooner terminate on thirty days written notice to the other. Taxpayer, under these agreements, became obligated to pay all taxes assessed against the demised premises, buildings or improvements, or against coal mined therefrom; to keep all buildings, fixtures, machinery tools, equipment, improvements and personal property adequately insured against fire, the loss, if any, to be paid to Candlemas Collieries Company; and to pay to Candlemas Collieries Company as rental an amount equal to net amount realized by taxpayer from coal mined and shipped from demised premises, less operating costs and expenses, as well as proper depreciation and amortization charges, and an operating profit of 2¢ per ton on coal so mined and shipped, but in case the earnings of taxpayer in any year were not sufficient to pay operating costs and operating profit of 2¢ per ton, taxpayer to deduct the deficiency from earnings of any subsequent year or demand their payment in cash.

4. During the years 1942 and 1943, taxpayer operated and carried on the business of mining coal under the agreements of 1923 and 1924 with Candlemas Collieries Company.

5. Taxpayer entered into an agreement with Coxe Brothers & Company, Inc., dated August 17, 1938. Under this agreement, Coxe Brothers & Company, Inc. delivered possession of a certain coal property, described in said agreement and referred to as "Tomhicken", to the taxpayer to be operated by the latter under the terms of the agreement of 1938.

6. Under the foregoing agreement of 1938, taxpayer was employed by Coxe Brothers & Company, Inc., as an independent contractor to mine and remove coal from the premises, and acquired possession of the premises including mine openings, inside and outside improvements, buildings, mules, electric motors, steam locomotives, mine cars, tracks, water and air lines, electric power, telephone and signal lines, hoists, air compressors, and any other equipment then at Tomhicken Colliery. Taxpayer, under the agreement, became obligated to pay Coxe Brothers & Company, Inc. as royalty for every ton of 2000 pounds mined and removed 30¢, provided that the minimum annual royalty should not be less than 30¢ per ton on 75,000 tons; to procure fire insurance for the premises; to maintain at its own cost all buildings, etc.; to pay in addition to royalty to Coxe Brothers & Company, Inc., all taxes assessed under the laws of the United States, Pennsylvania, County or school on land or coal thereon, and upon any coal mined, prepared, used or sold by taxpayer, and upon buildings and equipment and upon the right to mine or remove or operate. The agreement was to become effective August 17, 1938, and to continue in effect until August 17, 1943, and if workable coal was not exhausted on August 17, 1943, taxpayer had the option of extending the agreement for one to five years. Under the agreement the parties mutually agreed that all equipment or improvements built or made by taxpayer should be, at the option of Coxe Brothers & Company, Inc., at termination valued by disinterested persons and taken by Coxe Brothers & Company, Inc. at such valuations or removed at taxpayer's expense.

7. During the years 1942 and 1943, taxpayer operated and carried on the business of mining coal under the agreement of 1938 with Coxe Brothers & Company, Inc.

8. Taxpayer entered into an agreement with Coxe Brothers & Company, Inc., dated June 1, 1940. Under this agreement Coxe Brothers & Company, Inc. delivered possession of certain coal properties, described in said agreement and referred to as "Beaver Meadow" and "Deringer", to the taxpayer to be operated by the latter under the terms of said agreement.

9. Under the foregoing agreement of 1940, taxpayer was demised all veins of coal under the premises and the surface lands and all buildings, structures, improvements, machinery, apparatus and fixtures of every kind, to have and to hold the premises and privileges granted from the date of the agreement until there was no coal in the premises. Taxpayer, under the agreement, became obligated to pay to Coxe Brothers & Company, Inc. as royalty on every ton of coal mined, dug or stripped from the premises and shipped by taxpayer six per centum of net realization per net ton, and in any event Coxe Brothers & Company, Inc. was not to receive less than two per centum of taxpayer's net realization or a minimum of 20¢ per net ton of coal mined from the Lehigh Valley Coal Company section and 10¢ per net ton on balance of tonnage whichever was greater; to pay all taxes on premises, improvements, coal mined prepared or shipped, or on coal in place; to maintain workings at its own expense; to keep buildings and fixtures adequately insured against fire. Under the agreement the parties mutually agreed that at the expiration of the lease all improvements constructed by taxpayer should be appraised and paid for by Coxe Brothers & Company, Inc., but that Coxe Brothers & Company, Inc. should have the right to decline the property and then taxpayer should remove it.

10. During the years 1942 and 1943, taxpayer operated and carried on the business of mining coal under the agreement of 1940 with Coxe Brothers & Company, Inc.

11. In its United States Corporation Income and Declared Value Excess-Profits Tax Returns for the calendar years 1942 and 1943, taxpayer claimed percentage depletion deductions of $7,058.78 and $4,974.58, respectively; these deductions were disallowed and taxpayer was assessed and, on January 30 and 31, 1947, paid tax deficiencies of $2,149.01, with interest thereon of $494.96, for 1942, and $1,253.92, with interest thereon of $213.57, for 1943, or a total of $4,111.46.

## Discussion

Under all the agreements, taxpayer was required to pay all taxes and to keep the premises insured against fire for the benefit of Candlemas Collieries Company and Coxe Brothers & Company, Inc. The taxpayer was required to pay the cost of repairing and maintaining buildings and equipment. The taxpayer was required to do whatever was necessary in the way of development in order to properly extract the coal. In doing the foregoing, as well as in carrying out other terms of the agreements, the taxpayer acquired a capital investment in the coal in place which was necessarily reduced as the coal was extracted. Taxpayer was dependent on the coal in place for its profit and had an economic interest in the coal in place, and in the opinion of this Court was entitled to a deduction for depletion under Sections 23 (m) and 114(b)(4) of the Internal Revenue Code, 26 U.S.C.A. §§ 23(m) and 114 (b)(4).

The Court reaches the following Conclusions of Law:

1. Taxpayer through its control over extraction and through its possibility of profit from the use of its right over production, dependent solely upon extraction of coal, had an economic interest in the coal in place in the premises demised to it under the agreements of 1923 and 1924 with Candlemas Collieries Company and under the agreements of 1938 and 1940 with Coxe Brothers & Company, Inc.

2. Taxpayer acquired, by investment, an interest in the coal in place in the premises demised to it under the agreements of 1923 and 1924 with the Candlemas Collieries Company and under the agreements of 1938 and 1940 with Coxe Brothers & Company, Inc., and secured, by these agreements, income derived from the severance and sale of said coal to which taxpayer was required to look for a return of its capital, thereby possessing an economic interest.

3. Taxpayer had such an economic interest in all the coal in place in the premises demised to it under the agreements of 1923 and 1924 with Candlemas Collieries

Company and under the agreements of 1938 and 1940 with Coxe Brothers & Company, Inc., as to entitle it to a deduction for depletion on a percentage of income basis on its total gross income derived from such mining under Sections 23(m) and 114(b)(4) of the Internal Revenue Code, 26 U.S.C.A. §§ 23(m) and 114(b)(4) in its United States Corporation Income and Declared Value Excess-Profits Tax Returns for the calendar years 1942 and 1943.

4. Taxpayer is entitled to recover tax deficiencies and interest paid to the Collector of Internal Revenue for the calendar year 1942 in the amount of $2,149.01 and $494.96 with interest at the rate of 6 per centum from January 30, 1947, the date of payment.

5. Taxpayer is entitled to recover tax deficiencies and interest paid to the Collector of Internal Revenue for the calendar year 1943 in the amount of $1,253.92 and $213.57 with interest at the rate of six per centum from January 31, 1947, the date of payment.

An appropriate Order will be filed herewith.