Kenneth Whitmer and Beatrice Whitmer, et al. [1] v. Commissioner. Whitmer v. Commissioner
Docket Nos. 4479-67, 4498-67, 4513-67, 4957-67.
United States Tax Court
T.C. Memo 1969-286; 1969 Tax Ct. Memo LEXIS 7; 28 T.C.M. (CCH) 1480; T.C.M. (RIA) 69286; December 24, 1969, Filed Howell C. Mette, 6th Floor, 400 N. Third St., Harrisburg, Pa., for the petitioners. Giles J. McCarthy, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1962, 1963, and 1964 in the following amounts: Docket No.
Petitioners
1962
1963
1964
4479-67
Kenneth and Beatrice Whitmer
$1,835.77
$4,977.98
$1,595.89
4498-67
Victor and Helen Delorso
764.20
2,103.22
531.98
4513-67
John and Ann Delorso
740.68
2,018.33
458.29
4957-67
William E. and Mary Heitzman
1,902.26
5,254.70
1,620.27
*8 Respondent, on brief, conceded one of the issues raised in the pleadings, leaving for our decision only whether in computing distributable income of a partnership 1481 composed of Kenneth Whitmer and William E. Heitzman a deduction for percentage depletion is allowable with respect to coal mining operations conducted by the partnership under a lease with the Commissioners of the County of Northumberland, Pennsylvania. The determination of this issue is dependent upon whether the partnership had an economic interest in the coal underlying the tract upon which it was operating pursuant to the lease. Findings of Fact Some of the facts have been stipulated and are found accordingly. Kenneth Whitmer and Beatrice Whitmer, husband and wife who were legal residents of Paxinos, Pennsylvania at the time of the filing of their petition in this case, filed a joint Federal income tax return for each of the calendar years 1962, 1963, and 1964 with the district director of internal revenue at Philadelphia, Pennsylvania. Victor Delorso and Helen Delorso, husband and wife who resided at the time of the filing of their petition in this case in Sunbury, Pennsylvania, filed a joint Federal *9 income tax return for each of the calendar years 1962, 1963, and 1964 with the district director of internal revenue at Philadelphia, Pennsylvania. John Delorso and Ann Delorso, husband and wife who resided at the time of the filing of their petition in this case in Shamokin, Pennsylvania, filed a joint Federal income tax return for each of the calendar years 1962, 1963, and 1964 with the district director of internal revenue at Philadelphia, Pennsylvania. William E. Heitzman and Mary Heitzman, husband and wife who resided at the time of the filing of their petition in this case in Shamokin, Pennsylvania, filed a joint Federal income tax return for each of the calendar years 1962, 1963, and 1964 with the district director of internal revenue at Philadelphia, Pennsylvania. All of the petitioners kept their records and reported their income on a cash receipts and disbursements basis of accounting. Kenneth Whitmer, Victor Delorso, John Delorso, and William Heitzman (hereinafter referred to as Kenneth, Victor, John, and William, respectively) are equal partners in a partnership organized prior to 1952, the DH&W Coal Company (hereinafter referred to as DH&W). Since January 1, 1952, DH&W *10 has been engaged as an independent mining operation in deep mining of anthracite coal in Northumberland County, Pennsylvania. Independent miners generally conduct small operations as compared to the large corporate operations which once flourished in the anthracite coal areas of Northumberland County. DH&W produces coal from public coal lands of Northumberland County. William and Kenneth are equal partners in Heitzman & Whitmer, a partnership engaged in independent deep mining operations similar to those of DH&W and the trucking of anthracite coal in Northumberland County. The partnership has been in business since 1952. From 1952 until June of 1961 the Heitzman & Whitmer partnership was engaged solely in trucking coal from the heads of independent mines to breaker for a fixed fee based on the number of tons hauled and the distance hauled. The County of Northumberland prior to the years here in issue acquired fee simple title to a substantial acreage of land containing natural deposits of anthracite coal by purchase at a county treasurer's sale for delinquent taxes levied by the county and by the township school district wherein the land is located. After obtaining title to the *11 land including the mineral rights, the County Commissioners of Northumberland County, acting on behalf of the county, entered into agreements with various individuals, partnerships, and corporations providing for the extraction and removal of coal from the countyowned land by those persons in consideration of the payments of royalties to the county. The proceeds from the royalties are distributed to the county and the school district and townships in which the land is located in accordance with the millage rate in effect at the time the land was acquired by the county. On February 11, 1952, the partners of DH&W purchased for $5,000 from a third party all interest of that party in a mining operation including appurtenances and machinery located on the Thomas Gaskins 127-acre tract in Coal Township, Northumberland, Pennsylvania, which operation was conducted on land owned by the County of Northumberland. [2] The agreement provided 1482 that the seller relinquishes all right and interest in the mining lease between the seller and the County of Northumberland with respect to the 127-acre Thomas Gaskins tract. *12 In 1956 DH&W and the Commissioners of the County of Northumberland, acting on behalf of the county, executed an agreement leasing to DH&W for coal mining the same Thomas Gaskins tract of 127 acres in the north dip of the #2 Lykens Vein and numbered C-447. This lease was operated continuously by DH&W until June of 1961, at which time the interest of DH&W was sold to William and Kenneth trading as Heitzman & Whitmer. In 1961 DH&W became aware that the particular vein from which coal was being extracted was being exhausted and that to continue mining operations on the Northumberland lease C-447 would require additional capital investment to move farther under the surface to another level. John and Victor did not wish to invest further capital to DH&W to enable the partnership to continue the operation. However, William and Kenneth believed the venture worthwhile. Therefore, the partnership of Heitzman & Whitmer purchased from DH&W the mining equipment at the Thomas Gaskins tract and all rights and interest DH&W had to the deep mining lease agreement No. C-447. The agreement dated June 30, 1961, between Kenneth and William, trading as Heitzman & Whitmer, and John and Victor provided *13 in part as follows: 1. The Party of the First Part, insofar as the First Party has the power and authority so to do, hereby sells, conveys, transfers, demises and delivers to the Party of the Second Part, all of the interest, of the Party of the First Part, in the aforesaid mining operation and all appurtenances thereto for the sum of One ($1.00) Dollar and other valuable consideration, each to the other in hand paid, payment in full, the receipt whereof is hereby duly acknowledged by the Party of the First Part. 2. The Party of the First Part, insofar as the Party of the First Part has the power and authority so to do, hereby relinquishes all rights and interest to the deep mining lease agreement No. C-447, for the aforesaid mining operation, and recommends that the lease be issued to the Party of the Second Part. 3. It is expressly agreed by the Parties, hereto, that this agreement and none of the agreements, herein contained, shall be construed to constitute a sale of Anthracite coal in place, a sale of the lease or assignment or transfer of the same. The amount paid by William and Kenneth for the mining equipment and the other rights received under this agreement was $17,500, *14 of which $5,000 was attributed by William and Kenneth to the lease and $12,500 to the mining equipment at the site. The agreed amount of $17,500 was paid to DH&W as follows: Assumption of loan, National Mine Bank of Shamokin
$ 8,500.00
Credit for accounts received of Heitz- man and Whitmer for trucking service for DH&W
2,500.00
Cash, John Delorso
1,625.00
Cash, Victor Delorso
1,625.00
Credit, capital accounts, Heitzman and Whitmer 3,250.00
$17,500.00
On June 13, 1961, an agreement entitled, "Deep Mining Lease" was entered into between the County of Northerumberland, Pennsylvania, acting through its duly elected and qualified commissioners, and William and Kenneth. This agreement provided in pertinent part as follows: 1. LESSOR, insofar as it has the power and authority so to do, hereby leases and lets unto MINER the coal underlying the following described tract of land, together with the right and privilege of mining and removing the same, * * * The lessee shall comply with the Pennsylvania State Mine Law and furnish the County Engineers with a print after every posting or survey period showing the location of the surface opening and the workings *15 on this lease. 2. The LESSOR hereby grants, demises and lets unto the MINER the right and privilege of digging, mining and carrying away anthracite coal wholly at his own expense and cost in and from the described premises, in accordance with the terms and conditions of this agreement. 3. MINER hereby agrees, from and after the execution and delivery of this agreement, and until the MINER shall have finally ceased, whether voluntarily or involuntarily, mining upon any or all of the said premises, that MINER shall pay as rent and royalty to LESSOR weekly the sum of THIRTY-FIVE ($.35) CENTS per gross ton of two thousand two hundred forty (2,240) pounds of raw coal removed from said land. * * * 4. The MINER agrees to have all raw coal mined and removed from said tract 1483 delivered to any breaker designated by the LESSOR except that the MINER may, with prior consent in writing of the LESSOR, change breakers from time to time, and the LESSOR agrees not to unreasonably withhold its consent to change, provided, however that no coal shall be taken to a breaker outside of Northumberland County. The MINER further agrees that the part breaker operator to whom the coal is delivered *16 shall deduct the herein specified royalty on the gross weight as herein specified upon the delivery of each load of raw coal removed from the said tract described herein. 5. All royalty or rent collected by the breaker operator on raw coal delivered from the tract herein described, shall be paid to the LESSOR together with a complete and adequate record of the royalty collected. 6. MINER agrees to have all raw coal mined and removed from the said tract weighed at scales by a duly licensed weighmaster of the Commonwealth of Pennsylvania. The scales to be used shall be selected by the MINER from the list of scales approved by the LESSOR and the MINER shall not take any coal to scales not approved by the LESSOR. * * * 11. MINER hereby agrees that it will work the land herein mentioned continuously and in a skillful and workmanlike manner under the direction and subject to the approval of the LESSOR, its agents or engineers, to its fullest capacity, and to leave no merchantable coal abandoned or neglected which in the opinion of said agent or engineers can be taken out without injury to the mines or lands. 12. MINER hereby agrees to comply with all the laws of the United States *17 of America and the Commonwealth of Pennsylvania and to secure any permits and licenses which may be required by the United States of America or Commonwealth of Pennsylvania and particularly from the Pennsylvania Department of Forests and Waters, before engaging in any mining under this lease. 13. MINER hereby agrees to protect and save harmless the LESSOR from all liability of whatsoever kind or nature which may be caused by, or which may flow from, the operations of said MINER upon said land. 14. This agreement shall in no way nullify, invalidate or impair in any way the title of the LESSOR, and payment of the royalties or rents hereunder shall in no way work or be construed as a redemption either in whole or in part, or as a sale of said land either in whole or in part; nor shall it be construed as an abandonment by the LESSOR of this land, but said tract of land shall remain in the hands of the County Commissioners as LESSOR and the payments made hereunder shall be payments in the nature of rent or royalty. The LESSOR and its said Commissioners, W. Fred Kohler, Fred E. Hoffman and Oscar Kehler, neither individually nor in any capacity assume any liability hereunder except to *18 receive and turn over to the Treasurer of Northumberland County such moneys as are received hereunder, so that the County Treasurer may properly distribute them among the various municipal subdivisions interested in the said lands in such proportions as each may be entitled to under the law. It is further understood between the parties hereto that in the event of a sale of said lands by the County or a redemption in full of the said lands by those persons legally entitled to redeem the same, that this lease shall then immediately terminate as well as all rights of the MINER hereunder. 15. It is expressly understood between the parties hereto that the MINER shall operate the lands herein leased as an independent contractor and not as the agent, servant or employee of LESSOR, and any provision in this agreement pertaining to supervision, inspection or instructions by LESSOR, its representatives, engineers, employees or agents, is not intended to, nor shall it be construed in any way, to create a master and servant relationship between the parties hereto. 16. MINER hereby agrees not to transfer, assign, mortgage, or encumber with liens of any kind whatsoever the estate hereby granted, *19 either in whole or in part, nor interest or associate any other person, corporations or associations in the estate hereby granted without prior written consent of the LESSOR first had and obtained. 17. It is hereby expressly understood between the parties hereto that the MINER is granted the right and privilege (as hereinabove limited) to remove coal from the hereinabove mentioned land by deep mining methods only and that the MINER shall not remove or cause to be removed coal from the hereinabove described land by the open pit or strip mining method. This agreement shall automatically terminate and cease to have any binding effect and force in the event that the MINER for any cause or reason whatsoever, not due to abnormal conditions, shall cease to mine and remove coal from the aforedescribed premises for a period of at least thirty consecutive days, and in the event of his failure to so mine, the LESSOR at its option may, without 1484 taking any legal procedure, declare this lease void and retake possession of the demised premises together with any and all improvements situated thereon. 18. The MINER agrees to permit ingress, egress and regress over the leased premises for *20 all persons who have other agreements with the LESSOR for the mining of coal. 19. Any violation of any of the terms of this agreement by the MINER shall immediately cancel the same. 20. It is hereby expressly understood between the parties hereto that LESSOR may terminate this agreement completely and fully and without liability upon it or any further recourse against it, upon thirty days written notice given to MINER or by posting the same upon the lands hereinabove mentioned. * * * 24. MINER agrees to peacefully deliver up and surrender possession of the demised premises to the LESSOR at the expiration or sooner termination of this agreement or any renewal or extension thereof. * * * 28. This agreement, subject to all of its terms and conditions, shall be in effect until June 13, 1962 subject, however, to the length of time during which the County of Northumberland remains the owner of said premises * * * 30. Upon the breach of any of the covenants, obligations or agreements of this agreement, and when this agreement shall be determined by condition broken, either during the original term of the agreement or any renewal or extension thereof, and also when and as soon as *21 the term hereby created or any extension thereof, shall have expired, the LESSOR may declare this agreement null and void and of no effect, * * * The type of deep mining done by Heitzman & Whitmer is slope mining. Coal removed from the mine is ungraded as to size and contains slate and rock. The coal is shipped by truck and sold to a breaker at market prices. The breaker to which Heitzman & Whitmer sold the coal mined from lease C-447 and all 11 breakers to which it could have sold such coal were independent of Northumberland County. Coal was never sold by Heitzman & Whitmer to the county. No lease other than the one dated June 13, 1961, had been executed between Heitzman & Whitmer and Northumberland County. However, Heitzman & Whitmer continued to operate the mine with the knowledge and acquiescence of the county during the years 1962, 1963, and 1964. On their Federal income tax returns for each of the years here in issue Kenneth and Beatrice Whitmer reported income from the partnership of Heitzman & Whitmer. For each of the years here in issue William E. and Mary Heitzman, on their Federal income tax returns, reported income from the partnership of Heitzman & Whitmer. The income *22 from the partnership of Heitzman & Whitmer as reported by the Whitmers and the Heitzmans was based on the distributable income shown on the partnership returns of income filed by the partnership for 1962, 1963, and 1964. On these returns of income the partnership claimed deductions for percentage depletion under sections 611 and 613, I.R.C. 1954, [3] in the amounts of $4,545.27, $8,330.01, and $3,377.12 for the years 1962, 1963, and 1964, respectively. Respondent in his notice of deficiency to the Whitmers increased their income as reported from the partnership of Heitzman & Whitmer, based in part upon disallowing in full the depletion deduction claimed by the partnership. Respondent in his notice of deficiency to the Heitzmans increased their income as reported from the Heitzman & Whitmer partnership. This increase likewise resulted in part from a disallowance in full of the deduction claimed by the partnership for depletion. Ultimate Finding of Fact Petitioners Kenneth and William, trading as Heitzman & Whitmer, did not have an economic interest in coal in place under the lease dated *23 June 13, 1961, with the County of Northumberland, Pennsylvania. Opinion Section 611 [4] provides for the deduction, in computing taxable income, of a reasonable allowance for depletion. This 1485 allowance for depletion is to be made under regulations prescribed by the Secretary or his delegate. *24 Section 613 [5] provides for percentage depletion for coal of 10 percent of the gross income from the property, excluding an amount equal to rents or royalties paid but not to exceed 50 percent of the taxpayer's taxable income from the property. *25 In order for a taxpayer to be entitled to an allowance for depletion, he must have an "economic interest" in the mineral in place. The definition of an "economic interest" in mineral deposits given by the Supreme Court in Palmer v. Bender, 287 U.S. 551 (1933), and amplified in Helvering v. Bankline Oil Co., 303 U.S. 262 (1938), has in essence been incorporated into the Income Tax Regulations. [6]
*26 Although it has long been settled that "an economic interest is possessed" by a taxpayer who has "acquired by investment any interest in mineral in place * * * and secures, by any form of legal relationship, income derived from the extraction of the mineral * * * to which he must look for a return of his capital," there has been continuing litigation concerning when a taxpayer has made an "investment * * * in mineral in place" and must look to income from the extraction of the mineral for a "return of his capital." In Parsons v. Smith, 359 U.S. 215 (1959), the Court enumerated seven factors on which it based its conclusion that the taxpayer involved in that litigation did not have an "economic interest" in the mineral in place. These factors which were reiterated in Paragon Jewel Coal Company v. Commissioner, 380 U.S. 624 (1965) were (1) that the taxpayers' interest was only in movable equipment; (2) that their investment in equipment was recoverable through depreciation; (3) that the contracts were terminable without cause on short notice; (4) that the landowners did not agree to and did not surrender any capital interest in the coal in place; (5) that *27 the coal at all times belonged to the landowners and the taxpayers could not sell it but were required to deliver it to the landowners; (6) that the taxpayers were not to have any part of the proceeds from the sale of the coal but were to be paid a fixed sum for each ton mined; and (7) that the taxpayers 1486 agreed to look only to the landowners for all amounts due them under the contract. In the instant case Heitzman & Whitmer could and did sell the coal it mined to such breaker as it chose as long as the lessor approved of its choice. The partnership sold the coal at the market price and not at a prearranged price. The partnership kept all the proceeds from the sales except for the required royalty and was not paid only a fee per ton for mining. In these respects this case differs from Parsons v. Smith, supra, and Paragon Jewel Coal Company v. Commissioner, supra.However, except for the royalty payment the partnership's only money investment was in movable equipment and whatever part of the $17,500 it paid to DH&W might be considered to be for DH&W's agreeing to relinquish all its rights and interest to lease agreement No. C-447 and recommending *28 that the lease be issued to the Heitzman & Whitmer partnership. The partnership's lease contained a provision that it was terminable by the lessor on 30 days' notice. The lease was not assignable without the consent of the lessor. The lease specifically provided that it should not be construed "as a sale of said land either in whole or in part" and that in the event of the sale of the land the lease should terminate. These provisions of the lease tend to indicate that the "coal in place" at all times belonged to the lessor and that the partnership had no ownership of the coal until the coal was severed from the land. Petitioners contend that $5,000 of the payment by the Heitzman & Whitmer partnership to DH&W was an investment in the lease and therefore the partnership did "acquire by investment" of $5,000 an interest in the coal "in place." The evidence does not support a payment by the Heitzman & Whitmer partnership of $5,000 to DH&W for the "lease" but merely an allocation of that amount to the "lease" on the partnership's books. Even if $5,000 of the $17,500 payment to DH&W was for something other than machinery, it was for the recommendation of DH&W that the lease No. C-447 be *29 granted to Heitzman & Whitmer. In fact the agreement of June 30, 1961, between Heitzman & Whitmer and the Delorsos was dated after the June 13, 1961 date of the lease No. C-447 between the Commissioners of Northumberland County and Heitzman & Whitmer. The inference is that the actual written agreement between Heitzman & Whitmer and the Delorsos was not executed and the payment with respect thereto made until the lease of the land previously worked by DH&W had been given by the Commissioners of Northumberland County to Heitzman & Whitmer. Under the facts here found we conclude that aside from the required royalties Heitzman & Whitmer had no money investment with respect to lease No. C-447 other than in movable machinery. In Charles P. Mullins, 48 T.C. 571, 579-580 (1967), we stated that even though "no court has placed reliance on royalty payments as a factor sufficient in itself to give a lessee a depletable interest in minerals in place" that factor coupled with the right to mine the coal to exhaustion because of no right in the lessor to terminate the lease and the obligation to mine to exhaustion or until it was no longer economically feasible to mine such coal, did *30 cause the taxpayer to have an "investment" in the coal in place. In Charles P. Mullins, supra, we held, however, that the taxpayer had no economic interest in the coal in place under another lease which contained substantially the same provisions as the lease which we considered to result in the taxpayer having an economic interest in the coal in place except that it was terminable by the lessor without cause on 60 days' notice. We reached this conclusion since we considered the termination right by the lessor to result in the lessor not surrendering its capital interest in the coal in place. The lease in the instant case reserves certain rights in the lessor which were not reserved by the lessor in the Charles P. Mullins case. Whether these reservations would cause us to conclude here that Heitzman & Whitmer did not have an economic interest in the coal in place under our holding in the Charles P. Mullins case, we need not decide. In our view, despite petitioners' arguments to the contrary, the Commissioners of Northumberland County had the right to cancel the partnership's lease without cause on 30 days' notice. Therefore under our holding in Charles P. Mullins, supra, *31 Heitzman & Whitmer did not have an economic interest in the coal in place so as to be entitled to percentage depletion. See also William M. Legg, 39 T.C. 30 (1962); McCall v. Commissioner, 312 F. 2d 699, 705 (C.A. 4, 1963), affirming 37 T.C. 674 (1962); and United States v. Stallard, 273 F. 2d 847, 849-850 (C.A. 4, 1959). 1487 The Heitzman & Whitmer lease of June 13, 1961, contains the following provisions: 20. It is hereby expressly understood between the parties hereto that LESSOR may terminate this agreement completely and fully and without liability upon it or any further recourse against it, upon thirty days written notice given to MINER or by posting the same upon the lands hereinabove mentioned. Petitioners argue that this clause should be interpreted as providing for termination only for cause. In our view the clause is clear and unambiguous on its face. This clause provided that the lease could be terminated without cause on 30 days' notice. The testimony of one of the Commissioners of Northumberland County who signed the lease [7] corroborates the interpretation of this provision as permitting termination without *32 cause. Also the fact that there are a number of provisions in the lease for termination for cause supports the interpretation that paragraph 20 provided for termination upon 30 days' notice without cause. Petitioners contend that it was not the practice of the Commissioners to terminate without cause and the evidence does support this contention. However, the evidence also shows that the right to terminate without cause was reserved to the Commissioners so that upon a change of commissioners there could be a termination if the new commissioners *33 deemed such a termination appropriate. Petitioners argue that under Pennsylvania law the lease could not be terminated without cause. However, they have not directed our attention to nor have we found any Pennsylvania cases or law holding that a provision for termination of a lease such as that here involved by the lessor without cause is not enforceable by the lessor. [8]
We hold that the partnership of Heitzman & Whitmer is not entitled to the claimed depletion deductions for the calendar years 1962, 1963, and 1964 disallowed by respondent in the computation of its distributable partnership *34 income. Because of the concession by respondent and certain adjustments in the notices of deficiency not placed in issue, Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Victor and Helen Delorso, Docket No. 4498-67; John and Ann Delorso, Docket No. 4513-67; and William E. and Mary Heitzman, Docket No. 4957-67.↩
2. There was an error in the description which was later corrected. The erroneous original description was "on the John Hoglin Warranty Tract situated in the Township of East Cameron."↩
3. All references are to the Internal Revenue Code of 1954.↩
4. SEC. 611. ALLOWANCE OF DEDUCTION FOR DEPLETION. (a) General Rule. - In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing taxable income, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary or his delegate. For purposes of this part, the term "mines" includes deposits of waste or residue, the extraction of ores or minerals from which is treated as mining under section 613(c). In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this section for subsequent taxable years shall be based on such revised estimate. (b) Special Rules. - (1) Leases. - In the case of a lease, the deduction under this section shall be equitably apportioned between the lessor and lessee. * * *↩
5. SEC. 613. PERCENTAGE DEPLETION. (a) General Rule. - In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 percent of the taxpayer's taxable income from the property (computed without allowance for depletion). * * * (b) Percentage Depletion Rates. - The mines, wells, and other natural deposits, and the percentages, referred to in subsection (a) are as follows: * * * (4) 10 percent - asbestos (if paragraph (2)(B) does not apply), brucite, coal lignite, perlite, sodium chloride and wollastonite. * * * (c) Definition of Gross Income from Property. - For purposes of this section - (1) Gross income from the property. - The term "gross income from the property" means, in the case of a property other than an oil or gas well, the gross income from mining. (2) Mining. - The term "mining" includes not merely the extraction of the ores or mineral from the ground but also the treatment processes * * *↩
6. Income Tax Regs., Sec. 1.611-1(b)↩ Economic interest. (1) Annual depletion deductions are allowed only to the owner of an economic interest in mineral deposits or standing timber. An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the extraction of the mineral or severance of the timber, to which he must look for a return of his capital. But a person who has no capital investment in the mineral deposit or standing timber does not possess an economic interest merely because through a contractual relation he possesses a mere economic or pecuniary advantage derived from production. For example, an agreement between the owner of an economic interest and another entitling the latter to purchase or process the product upon production or entitling the latter to compensation for extraction or cutting does not convey a depletable economic interest. Further, depletion deductions with respect to an economic interest of a corporation are allowed to the corporation and not to its shareholders.
7. On cross-examination, Fred Kohler, one of the Commissioners of Northumberland County, Pennsylvania testified as follows: Q. * * * Let me ask you this specifically: Under Paragraph 20, it is provided that: "It is hereby expressly understood between the parties that the lessor may terminate this agreement completely and fully and without liability upon it, or any further recourse against it upon 30-days written notice given to the miner by posting the same upon his lands herein above mentioned." Let me ask you this question: Bearing in mind this paragraph that I just read to you, can the County terminate on 30-days notice? A. Yes.↩
8. A case decided by the Court of Common Pleas of Northumberland County relied on by petitioners held that there was sufficient evidence of a subsequent parol modification relating to a similar termination clause in a lease that the issue of whether the provision had in fact subsequently been modified should go to the jury. The inference from this case is that if the provision had not been modified it was enforceable. The further inference is that even though it may not be the practice to terminate leases such as the one here involved without cause, in fact, this has at times been done.↩